FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 2 7 2021

TAMMY H. DOWNS, CLERK

By:_____ DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**STEPHANIE L. ADCOCK**                                                   **PLAINTIFF**

**V.**                               **CASE NO. 4:21-CV-_669-KGB_**

**SAINT JEAN INDUSTRIES, INC.**                                          **DEFENDANT**

**COMPLAINT**  This case assigned to District Judge _Baker_
and to Magistrate Judge_____ _Harris_

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil

Rights Act of 1991 to correct unlawful employment practices based on sex and to provide relief to

Stephanie Adcock (Plaintiff) who was adversely affected by such practices.  Plaintiff alleges that

Defendant Saint Jean Industries, Inc. (Defendant Employer) subjected Plaintiff to a sexually

hostile work environment as well as sexual harassment and retaliation after Plaintiff reported the

actions of her supervisor to other employees and ultimately to human resources.  Further, Plaintiff

was subjected to a pervasive and continuously sexually hostile work environment by her

immediate supervisor who at all times acted as the agent and representative of the Defendant

Employer and Plaintiff was retaliated against by the supervisor after she refused his sexual

advances and habitual sexual commentary to and about her by denying her a promised raise in

salary.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 133, 1343, 1345 and

1367.  This action is authorized and instituted pursuant to § 706 (f)(1) and (3) of Title VII of the

Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §2000e-5(f) (1) and (3) and 42 U.S.C.

§2000e-2(a) and 42 U.S.C.§2000e-3(a) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C.

§1981(a).  The employment practices alleged herein are unlawful and were committed within the jurisdiction of the United States District Court for Eastern District of Arkansas, Central Division, more particularly Cleburne County, Arkansas.

## PARTIES

2.  At all relevant times, Plaintiff was an employee of Defendant-Employer in Heber Springs, Arkansas, and is an "aggrieved party" and was the charging party making the charge of discrimination against Defendant with the EEOC.  Plaintiff at the time of this Complaint is a resident of Searcy, White County, Arkansas.

3.  At all relevant times, Defendant Employer has continually been a corporation doing business in the State of Arkansas and has 15 or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year 42 U.S.C. §2000e (b).

4.  At all relevant times, Defendant Employer has been a covered entity under 42 U.S.C. §2000e-5(f)(3).

5.  At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.  More than 30 days prior to the filing of this lawsuit, Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against the Defendant Employer alleging violations of Title VII by Defendant Employer.

7.  On April 28, 2021, the EEOC issued Plaintiff a Dismissal and Notice of Suit Rights. Plaintiff files this Complaint timely pursuant to the requirement of filing suit within 90 days of receipt of Notice of Suit Rights.

8. All conditions precedent to the initiation of this lawsuit have been duly met by the Plaintiff.

## **FACTUAL ALLEGATIONS**

9. Plaintiff restates and incorporates by reference all allegations set forth in paragraphs 1-8 herein, as if set forth word for word.

10. Plaintiff is female and was employed by Defendant Employer as Heat Treat Manager at an annual salary of $52,000 and her first day to report to work was on October 3, 2018.

11. Plaintiff was supervised by the foundry manager for the Defendant Employer who is male.

12. On October 23, 2018, the supervisor approached Plaintiff during work and told Plaintiff that it was such a beautiful day and asked Plaintiff if she would like to have lunch with him on his boat. The supervisor stated that it was probably the last day of the year that he would be able to take his boat out.

13. Plaintiff advised the supervisor that she did not know where the marina was located so the supervisor advised Plaintiff to meet back at Josh Park.

14. Plaintiff discussed her concerns about the lunch with a fellow employee before leaving.

15. The supervisor picked up Subway sandwiches and met Plaintiff at Josh Park and then drove the two of them to the marina.

16. After boarding the boat and eating lunch, the supervisor began trying to kiss the Plaintiff and then proceeded with non-consensual, forceful sex followed by sexual comments.

17. On the return trip to the worksite, the supervisor had Plaintiff to sit in the backseat of his truck.

18. The supervisor continued to make sexual comments to Plaintiff during working hours and requested that she accompany him to lunch. After several weeks of rejecting his advances, the supervisor threatened to fire Plaintiff if she did not give him more.

3

19. The supervisor showed a YouTube video to Plaintiff about his culture and told Plaintiff that it would be appropriate for her to greet him each morning with a kiss.

20. Until late spring of 2019, the supervisor would come into Plaintiff's office each work day and kiss her on the forehead and tell her that he loves her.

21. The supervisor continued with advances in the workplace towards the Plaintiff including another forced kiss in April 2019 inside an approximately 60 ft. long manufacturing oven that was down for repairs. The supervisor instructed Plaintiff to accompany him on the inspection of the equipment. After exciting the oven, the supervisor smirked, "I could have raped you in there."

22. The supervisor would make gestures when Plaintiff left the room or walked by that was witnessed by other employees.

23. During a visit by the head of the company, while in the same room, the supervisor texted Plaintiff about a pay raise. The supervisor then told Plaintiff that once the raise takes effect that he wants her to where her hair a certain way that he prefers.

24. Plaintiff confided in a second employee about the forcible sex on the supervisor's boat and other sexual harassment that followed at the worksite. That employee reported the matter to the human resources manager.

25. Plaintiff did not personally report the sexual harassment nor the forced sex but did meet with human resources personnel after the fellow employee reported the matter.

26. Plaintiff provided human resources with a written statement about the forcible sex and related actions of the supervisor.

27. Defendant Employer placed Plaintiff on paid Leave of Absence in July of 2019 while interviews were conducted by human resources for what they reviewed to as an investigation.

4

28. Defendant Employer did not place the supervisor on leave during the period of time that interviews were being conducted.

29. Plaintiff returned to the worksite of Defendant Employer on Monday, July 26, 2019 to attempt to resume employment but not in Plaintiff's regular department nor in a managerial position as she had held previously.

30. Plaintiff was instead placed in the Purchasing Department by Defendant Employer as a Purchasing Assistant. The new position was not a managerial position. Defendant Employer took Plaintiff's company cell phone from her after moving her to purchasing.

31. The supervisor remained at all times in the same position as Foundry Manager.

32. Plaintiff became overwhelmed emotionally and physically being back in the environment of the Defendant Employer so much so that the human resource assistant took her to get something to eat and talked with Plaintiff to ascertain that Plaintiff was not mentally or physically ready to resume work.

33. Plaintiff again reported to the Defendant Employer on July 29, 2019 to the job of Purchasing Assistant to resume work.

34. On July 29, 2019, Plaintiff questioned why she had to change jobs and not the supervisor that forced her to have sex on his boat and continued to sexually harass her. Plaintiff was told by the human resource manager that during the investigative interviews he found that she was "flirtatious and sexually inappropriate with others" and that the supervisor is an "excellent manager."

35. Plaintiff sought medical and psychological help during this time to address nightmares and flashbacks of the supervisor's forcing her to have sex. Plaintiff was prescribed medication and

therapy for her symptoms that were medically diagnosed as Post Traumatic Stress Disorder, Major Depressive Disorder and Anxiety Disorder.

36. Plaintiff lost 43 pounds from July 2019 to September 2019.

37. On August 6, 2019 Plaintiff while onsite, was on a scissor lift performing her work duties when she collapsed. When plaintiff came to, she went to the office at which time she again passed out and hit her head.

38. The health and safety supervisor of the Defendant Employer required that Plaintiff report to the local emergency room for a drug-screen even though Defendant Employer had drug-screens onsite and gave Plaintiff a packet of paperwork for workers' compensation.

39. Plaintiff did as she was requested and promptly went to the Baptist Health facility in Heber Springs where she presented for a drug-screen and for hitting her head.

40. Plaintiff was drug tested and given fluids at Baptist Health.

41. Plaintiff completed the requested workers' compensation paperwork and returned it to Defendant Employer.

42. Plaintiff continues to receive the medical billing for the Baptist Health drug screen.

43. Plaintiff has provided the billing to Defendant Employer on more than one occasion and Defendant Employer has not paid the medical bill.

44. Plaintiff received the most recent medical bill in July of 2021 reflecting no payment by Defendant Employer.

45. The supervisor was eventually sent to another location for a period of time in France and returned on Friday, October 18, 2019. With the supervisor back onsite at Defendant Employer, Plaintiff became overwhelmed by anxiety and initiated and filed the requisite paperwork with Defendant Employer for leave under the Family Medical Leave Act (FMLA). After submitting the

6

FMLA request, Plaintiff received a certified letter on November 2, 2019 from Defendant Employer requiring Plaintiff to provide a second/or third medical certification for her FMLA.

46. To the best of the knowledge and belief of Plaintiff, Defendant Employer had never required another employee seeking FMLA to provide a second/or third medical certification for FMLA.

47. Plaintiff called the human resource manager after receiving the letter and asked why she was being required to provide additional medical certification. Defendant Employer's human resource manager said to Plaintiff, "Well, it's not like you have a broken bone. I think this will be good for you and us both." Defendant Employer's human resource manager advised he would arrange for an appointment with UAMS.

48. Plaintiff told the human resource manager in the same telephone call that this requirement was retaliation and discrimination and that she planned to file a complaint with the EEOC. The human resource manager said, "I figured you would" and then hung up on the Plaintiff.

49. The appointment for further medical certification was never made by Defendant Employer.

50. Plaintiff's PTSD had become unbearable and on November 29th, 2019, she checked herself into Conway Behavioral Health and remained inpatient until December 4, 2019.

51. Plaintiff was forced to resign her employment on January 3, 2020 due to the hostile environment in the workplace.

52. Plaintiff continued therapy and mental health treatment with multiple medications thereafter.

53. As of this Complaint, Plaintiff has again been placed on FMLA with her current employer due to ongoing mental and physical health problems that were the cause of the supervisor and Defendant Employer.

## COUNT ONE: SEXUAL HARASSMENT
## AND HOSTILE WORK ENVIRONMENT

54. Plaintiff restates and incorporates by reference all allegations set forth in paragraphs 1-53 herein, as if set forth word for word.

55. Since at least October 23, 2018, Defendant Employer has engaged in unlawful employment practices at its Heber Springs, Arkansas location in violation of §703(a) of Title VII, 42 U.S.C. §2000e-2(a).

56. The unlawful employment practices include subjecting Plaintiff to unwelcome and continuous sexual harassment and a sexually hostile work environment because of her sex, female.

57. Plaintiff's supervisor began sexually harassing her and forcibly had sex with Plaintiff on October 23, 2018.

58. The sexual harassment by the supervisor of Plaintiff was frequent and persistent sexual comments, non-consensual touching and asking Plaintiff to kiss him and forcibly kissing the Plaintiff, sexual gestures towards Plaintiff in the presence of other employees, and requesting Plaintiff to wear her hair a certain way.

59. Plaintiff did not report the sexual harassment directly to the Defendant Employer but told other employees, one of whom reported the actions to human resources.

60. Sexual harassment committed by the supervisor of Plaintiff was severe and pervasive.

61. Defendant Employer was very lax in its approach to sexual harassment training and did not provide information about its sexual harassment policy in a consistent manner.

62. Defendant Employer failed to take appropriate measures to protect Plaintiff from sexual harassment.

63. Defendant failed to conduct reasonable and good faith investigation of the allegations against the supervisor.

8

64. Defendant took no action against the supervisor but instead removed Plaintiff from her managerial position and placed her in purchasing.

65. Defendant Employer took Plaintiff's work cell phone after it removed her from her managerial position.

66. Defendant Employers' unlawful employment practices include subjecting Plaintiff to a constructive discharge in violation of Title VII, 42 U.S.C. §2000e-2.

67. Plaintiff's working conditions were intolerable and inflicted emotional distress which directly affected Plaintiff's physical health, forcing Plaintiff to resign her employment.

### COUNT TWO: VIOLATION OF ARKANSAS CIVIL RIGHTS ACT

68. Plaintiff restates and incorporates by reference all allegations set forth in paragraphs 1-67 herein, as if set forth word for word.

69. This action is brought forth pursuant to the Arkansas Civil Rights Action (ACRA), Arkansas Code Annotated, §16-123-101, et seq., more specifically, A.C.A. §16-123-107.

70. In particular, Section 107(a) of the ACRA prohibits discrimination in the workplace and codifies the right to obtain and hold employment without discrimination. A.C.A. §16-123-107(a)-(a)(1).

71. Additionally, Section 107 (c)(1)(A) of ACRA provides:

> "[a]ny individual who is injured by employment discrimination by an employer in violation of subdivision (a)(1) of this section shall have a civil action in a court of competent jurisdiction, which may issue an order prohibiting the discriminatory practices and provide affirmative relief from the effects of the practices, and award back pay, interest on back pay, and, in the discretion of the court, the cost of litigation and a reasonable attorney's fee."

72. Section 107(c)(2)(A) of the ACRA entitled an injured party to an award of compensatory and punitive damages to remedy intentional discrimination by an employer.

73. As set forth herein, Defendant Employer discriminated against Plaintiff on the basis of her gender.

74. As a direct result of the actions of the Defendant Employer's unlawful discrimination, Plaintiff has suffered damages in the amounts to be proven at trial, including but not limited to back compensation, front compensation, future pecuniary losses, emotional pain, suffering, inconvenience, medical expenses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses suffered by the Plaintiff.

## **COUNT THREE: TORT OF OUTRAGE**

75.  Plaintiff restates and incorporates by reference all allegations set forth in paragraphs 1- 74 herein, as if set forth word for word.

76. Defendant Employer willfully and wantonly engaged in the extreme and outrageous conduct towards Plaintiff as described herein which was continuous and pervasive.  Defendant Employer's conduct is completely intolerable in our society.

77. That the Defendant Employer's conduct was the proximate cause of the damages suffered by the Plaintiff.  Plaintiff was damaged and suffers extreme emotion distress caused by the Defendant Employer and its agent which has been so pervasive that Plaintiff has been hospitalized and spent hours upon hours in therapy and in doctor's offices and she will continue to suffer in the future. No reasonable person should be expected to endure the outrageous and harmful sexual discrimination and abuse that Plaintiff has suffered during her employment with Defendant Employer.

78. Plaintiff has suffered financially due to lost income as both a direct and proximate results of Defendant Employer's actions.

## COUNT FOUR: RETALIATION

79.  Plaintiff restates and incorporates by reference all allegations set forth in paragraphs 1-78 herein, as if set forth word for word.

80. Plaintiff was retaliated against by Defendant Employer when she was required by Defendant Employer to provide a second and third medical certification of her FMLA.  But for her reporting the unlawful acts of the supervisor this retaliation would not have occurred.

81. Plaintiff was retaliated against when Defendant Employer required her to go to the medical facility for a work-related drug-screen and then refused to pay the medical billing from Baptist Health in Heber Springs, Arkansas. But for her reporting the unlawful acts of the supervisor this retaliation would not have occurred.

82. Plaintiff was retaliated against when she did not receive the raise in pay that was advised to her by the supervisor when she refused his continued sexual advances. But for her rebuffing the unlawful acts of the supervisor this retaliation would not have occurred.

## COUNT FIVE: PUNITIVE DAMAGES

83. Plaintiff restates and incorporates by reference all allegations set forth in paragraphs 1-82 herein, as if set forth word for word.

84. Defendant Employer knew or should have known that its acts were outrageous and would naturally and probably result in damage to the Plaintiff. Such conduct by Defendant Employer and its supervisor who acted at all times as its representative and agent was pervasive, deliberate, reckless and with malice given the known and obvious impact and damages it inflicted upon the Plaintiff.

85. The action of the Defendant Employer and its supervisor, who at all times acted as its representative and agent, was done with absolute indifference to the rights, health, safety and welfare of the Plaintiff.

86. As a direct and proximate result of the Defendant Employer's conduct, Plaintiff sustained damages and is seeking punitive damages in the amount deemed appropriate by a jury in order to punish Defendant Employer and to deter future similar conduct against others.

87. Plaintiff seeks compensation for her damages in an amount to be determined at trial to include but are not limited to:

      a.  Severe and pervasive emotional distress in the past and continuing through the present and future;

      b.  Mental anguish in the past and continuing through the present and future;

      c.  Physical pain and suffering; and

      d.  Any and all other damages warranted under State and Federal law.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

88. That Defendant Employer be ordered to make Plaintiff whole by paying all compensation for past and future pecuniary losses resulting from the unlawful employment practices to be determined at trial.

89. That Defendant Employer be ordered to make Plaintiff whole by paying all compensation for past and future nonpecuniary losses resulting from the unlawful employment practices to be determined at trial.

90. That Defendant Employer be ordered to make Plaintiff whole by paying her punitive damages resulting from the unlawful employment practices to be determined at trial.

91. That Defendant pay all attorney fees and cost costs that Plaintiff has expended in this matter.

92. That Defendant pay all other just and proper relief as deemed necessary at trial.

## JURY TRIAL DEMAND

93. Plaintiff requests a jury trial as to all questions of fact set forth herein and raised at the trial of this matter.

Respectfully submitted,
Stephanie L. Adcock, Plaintiff

By: Penny Choate Agee
Ark. Bar #2001104
Choate Law Firm, PLLC
515 South Main Street
Searcy, Arkansas 72114
(501) 305-4442
(501) 305-4452 facsimile
*pennychoate@pennychoatelawfirm.com*

13