IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

STEPHANIE L. ADCOCK                                                PLAINTIFF

v.                              No. 4:21-cv-669-DPM

SAINT JEAN INDUSTRIES, INC.                                       DEFENDANT

ORDER

1. In response to Adcock's complaint alleging sex discrimination and related claims arising out of her work at a foundry in Heber Springs, Saint Jean seeks judgment on the pleadings. FED. R. CIV. P. 12(c).

When evaluating this kind of motion, "a court must accept as true all factual allegations set out in the complaint, and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in [her] favor. Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006) (internal citation omitted); *see also Henson v. Union Pacific Railroad Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021). Some older precedent obligates the movant to clearly establish the absence of disputed material facts and the entitlement to judgment on the law. *E.g., Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Other precedent speaks in terms of proof, rather than

pleading: this kind of threshold judgment will be affirmed "only if [the plaintiff] can prove no set of facts in support of her claim that would entitle her to relief." *Williams v. Bradshaw*, 459 F.3d 846, 848 (8th Cir. 2006). One of Saint Jean's core defenses is a lack of timely exhaustion, which creates a limitations bar. That kind of issue can be addressed in a Rule 12(c) motion. *Levitt v. Merck & Co.*, 914 F.3d 1169, 1171 (8th Cir. 2019).

As part of its argument, Saint Jean offers Adcock's EEOC charge. The Court agrees that this document is embraced by the complaint and can be considered now. *Porous Media*, 186 F.3d at 1079. The Court disagrees, however, with the employer's arguments that Adcock's complaint unfairly and unexpectedly expands the issues raised in that charge. The charge, construed liberally, must give fair notice of the alleged wrongs; it need not specify each and every supporting fact. *Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000). Adcock's charge provided adequate notice to Saint Jean and her claims reasonably relate to it. *Ibid*.

2. Taking the record in the light most favorable to Adcock, here is what happened to her. The Court presents the facts in a timeline because one of Saint Jean's main arguments is that Adcock didn't file her EEOC claim soon enough to preserve all her claims.

- 3 October 2018            Adcock reported to work at Saint Jean's foundry as a heat treat manager

- 23 October 2018 — Supervisor forced Adcock to have sexual intercourse during a lunch trip on his boat

- December 2018 — Supervisor threatened to fire Adcock because she rejected his unwanted sexual attention

- October 2018–April 2019 — Every work day, supervisor came into Adcock's office, kissed her on the forehead, and told her he loved her

- April 2019 — Supervisor threatened sexual assault in manufacturing oven at the foundry

- Before July 2019 — Supervisor conditioned a pay raise on Adcock's wearing her hair a certain way

- Before July 2019 — Adcock told co-worker about sexual assault and harassment, and co-worker reported it to human resources

- July 2019 — Saint Jean placed Adcock on paid leave

- July 2019                         Saint Jean's investigation began

- 26 July 2019                  Adcock returned to work. Saint Jean reassigned her to the purchasing department in a non-managerial position

- 27 July 2019                  180 days before Adcock filed her EEOC charge

- 29 July 2019                  Saint Jean's human resources manager told Adcock that his investigation revealed that she was "flirtatious and sexually inappropriate with others" and that her supervisor was an "excellent manager"

- 6 August 2019                Adcock collapsed at work, hit her head, and was sent to hospital for drug screening

- Before 18 October 2019      Supervisor transferred to facility in France

- 18 October 2019            Supervisor returned to foundry

- After 18 October 2019       Adcock requested FMLA leave

- 2 November 2019           Adcock received certified letter from Saint Jean requesting additional medical certification for FMLA leave

- 29 November 2019    Adcock admitted herself for inpatient treatment at Conway Behavioral Health

- 3 January 2020      Adcock resigned

- 23 January 2020     Adcock filed EEOC charge

These facts in this sequence inform Adcock's many federal and state claims and the Court's consideration of Saint Jean's motion.

3. Adcock claims sexual harassment in her supervisor's many actions and, taking events as a whole, a hostile work environment. Accepting all her allegations as true at this point in the case, she has solid claims for a jury to resolve. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) (*quid pro quo* harassment); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) (hostile environment). There is, however, a timeliness hurdle.

In general, because Arkansas has no state anti-discrimination commission, an employee must file an EEOC charge within 180 days after the particular unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Consider, once again, the timeline. Each of the supervisor's harassing actions occurred before the filing period began. They are not actionable as stand-alone events. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). They could be actionable as part of a hostile work environment on a continuing violation theory. *Morgan*, 536 U.S. at 120; *Rowe v. Hussmann Corp.*,

381 F.3d 775, 779 (8th Cir. 2004). If there was an act contributing to "the same actionable hostile work environment practice . . . " during the filing period, then Adcock's claim can proceed. *Rowe*, 381 F.3d at 779 (quotation omitted). She points to Saint Jean's investigation, which she says was neither reasonable nor in good faith. But that investigation occurred a few weeks outside the filing period. Her demotion from heat treat manager to purchasing assistant on her return to work likewise occurred one day outside the filing period.

That leaves the HR manager's statements about his investigation, which Adcock says blamed the victim rather than the harasser. Those statements were within the filing period. The HR manager's words were connected with the supervisor's harassment. They were Saint Jean's explanation of the company's response to Adcock's experience with her supervisor.

The Court confronts three difficulties here.

First, the parties have not made focused arguments about what seems to be the dispositive event on exhaustion and therefore limitations.

Second, the post-*Morgan* precedent is mixed. Some decisions emphasize a similarity point: later conduct doesn't qualify as continuing the hostile work environment if that conduct is different than the earlier harassment. *E.g.*, *Rowe*, 381 F.3d at 779–81; *Jenkins v. Mabus*, 646 F.3d 1023, 1027 (8th Cir. 2011). Other decisions emphasize

that a hostile environment is the sum of many parts, which may include a variety of connected conduct resulting in an unlawful employment practice. *E.g., Jensen v. Henderson*, 315 F.3d 854, 859 (8th Cir. 2002). The issue shades into the adequacy of the employer's remedy and alleged retaliation. *Burkhart v. American Railcar Industries, Inc.*, 603 F.3d 472, 476 (8th Cir. 2010).

Third, the record is thin. The Court, for example, doesn't have the whole story about Saint Jean's investigation and remedy. From Adcock's perspective, neither was adequate and both continued the hostile work environment. Saint Jean notes its prompt corrective action, which removed Adcock from her harasser's reach.

The precedent involves rulings on summary judgment and after trial, not Rule 12(c) motions. More facts, and pointed briefing, will ameliorate these difficulties. The Court can then better address the important exhaustion/limitations issue. Saint Jean's motion for judgment on Adcock's federal and state claims for a hostile work environment is therefore denied without prejudice.

4. On retaliation, Saint Jean argues that Adcock didn't charge an adverse employment action with the EEOC within the limitations period. Saint Jean is correct that any retaliation claim based on a discrete adverse employment action not within the filing period is time barred. *Morgan*, 536 U.S. at 113; *Betz v. Chertoff*, 578 F.3d 929, 937–38 (8th Cir. 2009). The Court has already concluded, however, that

-7-

Adcock's EEOC charge reasonably relates to the claims in this case. Adcock pleads that, within the 180-day period, Saint Jean treated her differently than other employees because she reported that she had been sexually assaulted once and sexually harassed for many months by her supervisor. She points to the exchange with the HR manager. And she gives examples of disparate treatment.

Materially adverse employment actions are not as limited as Saint Jean argues. *Jackman v. Fifth Judicial District Department of Correctional Services*, 728 F.3d 800, 804–05 (8th Cir. 2013). Circumstances amounting to constructive discharge, for example, can produce a material employment disadvantage sufficient to constitute an adverse action. *Ibid; see also Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th Cir. 1999). A hostile work environment can also satisfy the materially adverse action element of a retaliation claim. *Mahler v. First Dakota Title Limited Partnership*, 931 F.3d 799, 807 (8th Cir. 2019). Whether Adcock has pleaded a hostile work environment retaliation claim is another unclear and unargued issue. More ventilation, with the benefit of discovery, will help here, too. Saint Jean therefore is not entitled to judgment as a matter of law on retaliation at this point.

5. On the tort of outrage, Saint Jean's motion focuses too narrowly on the supervisor's October 2018 sexual assault. It may be that the supervisor's assault cannot be imputed to the company under a theory of *respondeat superior. E.g., Regions Bank & Trust v. Stone County*

*Skilled Nursing Facility, Inc.*, 345 Ark. 555, 566–67, 49 S.W.3d 107, 114–15 (2001). But his many other harassing actions during Adcock's first few months at the foundry—threatening termination, daily unwanted touching and kissing, threatening sexual assault in the manufacturing oven, and refusing to give Adcock a raise because of her hair style—all fall far short of what is acceptable in a civilized society. *Rorie v. United Parcel Service, Inc.*, 151 F.3d 757, 762 (8th Cir. 1998). Arkansas law makes it difficult to prevail on an outrage claim in the employment context, *Burkhart*, 603 F.3d at 478, but Adcock has provided a sufficient record for the claim to go forward.

\* \* \*

Saint Jean's motion, *Doc. 4*, is denied without prejudice.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

11 March 2022